IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DUWANE R. BARKER,                                                                CV. 03-781-KI

           Petitioner,                              OPINION AND ORDER

   v.

JEAN HILL,

           Respondent.

Noel Grefenson
Attorney at Law
1415 Liberty Street S.E.
Salem, Oregon 97302

    Attorney for Petitioner

Hardy Myers
Attorney General
Youlee Yim You
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-6313

    Attorneys for Respondent

KING, Judge

    Petitioner Duwane Barker brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below,

1 -- OPINION AND ORDER

petitioner's amended habeas corpus petition is denied and this proceeding is dismissed.

## BACKGROUND

On August 11, 1994, petitioner was indicted on charges that he raped, sodomized, and sexually abused his five-year-old niece. A jury trial was held on October 26 and 27, 1994. The prosecution presented the testimony of the victim, the victim's mother, three police officers, two daycare providers, and a pediatrician.

The victim testified that her Uncle Duwane tried to put his penis in her bottom. She testified that petitioner touched her "privates" with his hand, mouth, and his "privates". The victim testified that she told her mother about the abuse because she "didn't want to be bad." A videotaped interview of the victim was also played for the jury.

The victim's mother, Robin Barker, testified that petitioner often stayed in her home for months at a time and cared for her two daughters in her absence. Ms. Barker testified that on March 15, 1994, her daughter told her that petitioner had "put his peepee between her butt", that he had "licked her peepee", and that he had "put his fingers into his mouth to make her peepee wet". Ms. Barker testified that the victim repeated these charges to her father, Scott Barker.

Ms. Barker immediately called the police. Gresham Police Officer Scott Alan Cunningham responded. Officer Cunningham

testified that during the course of an interview with the victim, she stated that petitioner was "mean to her bottom", that he put "baby grease in [her] bottom", "licked [her] pee pee", and put "his wiener in [her] bottom."

On March 23, 1994, Dr. Judith Bays interviewed the victim at the Child Abuse Response and Evaluation Services Unit of Emanuel Hospital. Dr. Bays testified that the victim told her that petitioner had "but his wiener on [her] butt", kissed her on the mouth, and forced her to touch his penis. Dr. Bays testified that the victim clarified that petitioner had put his penis inside her bottom and that it hurt. Dr. Bays testified that her physical examination of the victim was "basically normal." However, based upon the interviews with the victim and her parents, Dr. Bays opined that the victim had been sexually abused. During cross examination, Dr. Bays revealed that the victim's cousins had also been victims of sexual abuse. Dr. Bays testified that she did not ask the victim whether she had any sexual contact with her cousins.

Two employees from the victim's daycare center also testified. Joy Getgen testified that before the date of the alleged abuse, the victim was "outgoing, playful, happy", and "very friendly." In April, 1994, in contrast, the victim cried during nap time and wanted to be with her mother or sister. Ms. Getgen testified that when she was comforting the victim, the victim told her that her "uncle put his wiener in her butt".

3 -- OPINION AND ORDER

Taryn Weisend, the second daycare provider, testified that in April, 1994, she saw the victim laying on top of another little girl "rubbing their bodies together" in what Ms. Weisend perceived to be a "sexual act". When Ms. Weisend spoke to the victim about the incident, the victim responded "That is what my Uncle [Duwane] does to me."

Clackamas County Sheriff Detectives Linda Estes and Randolph Harris also testified. Detective Harris testified that he accompanied Estes while she conducted an interview with petitioner. Harris testified that petitioner repeatedly denied abusing the victim. However, when Estes stepped out of the room, petitioner's eyes filled with tears and he stated "If I did this, I don't remember."

Prior to petitioner taking the stand, petitioner's trial counsel moved the court to admonish the jury not to make any inferences from the fact that petitioner had been handcuffed during the course of the state's case. The trial judge instructed the jury as follows:

> Ladies and gentlemen, before we start here, I do want to draw your attention to one thing. In this and in many criminal trials, there are certain security measures and safety measures that are employed by the County. And many of you in this instance may have seen restraints on Mr. Barker, and may have noted the presence of the deputy from the Sheriff's office, and I believe one or more may have actually seen him in the hallway being directed out of the courtroom with the handcuffs.

///

4 -- OPINION AND ORDER

> Now, it's important that you can consciously recognize that is not an unusual circumstance in a trial involving serious charges. And it's important that you consciously recognize, to the extent that that image may create certain impressions, that you must not consider that as any evidence in the case. That's nothing that should be in your deliberations in any way, and you should not draw any negative inference or draw any inference from that matter at all about that in terms of your determination as to the facts of the case.

Petitioner testified that he did not abuse the victim and that he did not make any incriminating statements. Petitioner conceded that it was "more than obvious that something [had] happened" to the victim, but suggested that she may have been abused by her cousins. Petitioner also suggested that the victim's mother may have falsely accused him because he had threatened to report her children's poor living conditions to child welfare workers.

Petitioner's mother also testified for the defense. She testified that petitioner had a good relationship with the victim. She recounted an event when the victim and her sister had gone to bed and both of them decided to take off their pajamas. She testified that she heard Robin Barker state "I'm going to keep them away from Deanne's girls" [the victim's cousins].

The jury returned a unanimous guilty verdict on the charges of rape in the first degree, sodomy in the first degree, and sexual abuse in the first degree. Petitioner was sentenced to 160-months imprisonment, to be followed by 240 months of post-prison supervision, less time served.

5 -- OPINION AND ORDER

Petitioner appealed his conviction to the Oregon Court of Appeals. Petitioner's conviction was affirmed, without opinion, by the Oregon Court of Appeals. State v. Barker, 149 Or. App. 404, 942 P.2d 302 (1997). Petitioner failed to petition for review to the Oregon Supreme Court.

Petitioner sought state post-conviction relief alleging multiple claims including that his trial attorney was ineffective for failing to object to petitioner's appearance before the jury in restraints. The trial court denied post-conviction relief, concluding that trial counsel's representation of petitioner was within the scope of tactical choice and, in any event, petitioner had not demonstrated that prejudice resulted from any perceived error. Petitioner appealed the denial of post-conviction relief to the Oregon Court of Appeals.

On appeal, the state conceded that trial counsel's failure to object to petitioner being handcuffed in the jury's presence, with no security reason for doing so, "demonstrated a failure to exercise reasonable professional skill and judgment." The state argued, however, that trial counsel's error did not result in prejudice to petitioner.

The Oregon Court of Appeals agreed, opining that "the evidence of petitioner's guilt was overwhelming, rendering counsel's default nonprejudicial" and "harmless beyond a reasonable doubt". Barker v. Baldwin, 179 Or. App. 142, 143, 38 P.3d 962, rev. allowed, 334

6 -- OPINION AND ORDER

Or. 260 (2002), rev. dismissed, 335 Or. 422 (2003). The Oregon Supreme Court initially allowed review but subsequently dismissed review as improvidently granted. Id.

In his amended habeas corpus petition before this court, petitioner's raises one ground for relief--that trial counsel was ineffective for failing to object to the use of handcuffs in the presence of the jury.

## **STANDARDS**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a habeas corpus petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).

In the instant proceeding, petitioner claims that (1) this court must conduct an independent review of the state court record because the Oregon courts failed to issue a "reasoned decision";

7 -- OPINION AND ORDER

(2) the Oregon courts' decisions are an unreasonable application of federal law because neither court "provide[d] a reasoned decision for rejection of petitioner's claims"; and (3) the state courts' factual determinations are "objectively unreasonable because they reference no facts to support [their] determinations".

## DISCUSSION

A claim of ineffective assistance of counsel, requires petitioner to prove that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88 (1987). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams, 529 U.S. at 391. In evaluating proof of prejudice, this court "must consider the totality of the evidence" before the jury. Strickland, 466 U.S. at 696.

The Oregon Court of Appeals provided a reasoned decision demonstrating that it reached the merits of petitioner's ineffective assistance claim. The appellate court accepted the state's concession that trial counsel's failure to object to petitioner's handcuffing in the presence of the jury fell below an objective standard of reasonableness. The court further concluded that, in light of the overwhelming evidence against petitioner, petitioner suffered no prejudice as a result of counsel's

8 -- OPINION AND ORDER

deficiency. Applying state law principles, the court opined that "the presence of handcuffs was 'harmless beyond a reasonable doubt'" in light of the "overwhelming" evidence of petitioner's guilt. Barker, 179 Or. App. at 143 (quoting Davis v. Armenakis, 151 Or. App. 66, 69-70, 948 P.2d 327 (1997), rev. denied, 327 Or. 83 (1998) (incorporating harmless error standard into prejudice inquiry of ineffective assistance of counsel claim for failure to object to shackling)).

The Court of Appeals' decision, albeit brief, is entitled to deference under the AEDPA. McClure v. Thompson, 323 F.3d 1233, 1241 (9th Cir.), cert. denied, 540 U.S. 1051 (2003). Petitioner offers no evidence to rebut the appellate court's factual finding that the evidence of petitioner's guilt was overwhelming. See 28 U.S.C. § 2254(e)(1). Instead, petitioner simply faults the state court for failing to set forth the evidence it found to be overwhelming. Although I conclude that the Court of Appeals provided reasoning to support its conclusion, I nevertheless have conducted an independent review of the state court record. See Allen v. Ornoski, 435 F.3d 946, 955 (9th Cir.), cert. denied, 126 S.Ct. 1140 (2006) (when state court decision provides no reasoning to supports its conclusion, federal habeas court conducts independent review of record); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (same).

9 -- OPINION AND ORDER

As outlined above, the victim testified, both at trial and in a videotaped interview, that she was sexually abused by petitioner. The state offered the testimony of multiple witnesses demonstrating that the victim consistently told her parents, an investigating officer, daycare providers, and a CARES physician the details of the abuse and that petitioner was the abuser. The victim never accused any other individual of abuse. The victim displayed behavior consistent with sexual abuse. Although there were no physical signs of abuse, the CARES physician diagnosed the victim of having suffered sexual abuse. Detective Harris testified that petitioner stated during an interrogation: "If I did this, I don't remember."

In light of the totality of the evidence and the cautionary instruction given to the jury, I conclude that the state court's determination that petitioner was not prejudiced by trial counsel's failure to object to the handcuffs is neither contrary to, nor an unreasonable application of <u>Strickland</u>, nor is it premised upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, federal habeas corpus relief is not warranted. 28 U.S.C. § 2254(d)(1) & (2).

///

///

///

**CONCLUSION**

Based on the foregoing, petitioner's amended habeas corpus petition (#49) is DENIED and this proceeding is DISMISSED, with prejudice.

IT IS SO ORDERED.

DATED this   5th   day of April, 2006.

                                              /s/ Garr M. King
                                              Garr M. King
                                              United States District Judge